# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LACHAE VICKERS, individually, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>AMERICAN WAGERING, INC. D/B/A WILLIAM HILL AND CAESARS SPORTSBOOK,<br><br>            Defendant. | Case No.  1:23-cv-01440<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Lachae Vickers, individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant American Wagering, Inc. d/b/a William Hill and Caesars Sportsbook ("Caesars Sportsbook") and alleges as follows:

## INTRODUCTION

1.      In recent years, many states have legalized online sports betting and it has quickly become a multi-billion-dollar industry. In a crowded online betting marketplace, the stakes are extremely high for operators to attract new sports betting customers. Caesars Sportsbook has become an industry leader in part by making untruthful and deceptive promises to lure new bettors; specifically, by advertising that the company will provide new users with a $1,000 or $1,250 or even $5,000 "free bet," "risk-free bet," or a specified amount "on Caesars." But these promises are far from the truth: the bet is not in any respect "free" or without risk. Plaintiff and other consumers would not have signed up for and made a so-called "free" or "risk-free" bet with Caesars Sportsbook in the absence of these deceptive promises.

2. Large-scale marketing of Caesars Sportsbook by Defendant, including in television and print advertisements, in-arena marketing, and extensive internet and social media advertising, are and have been led with the false "free bet," "risk-free bet" and a specified amount "on Caesars" promises. Those advertisements contain materially deceptive representations while omitting any warnings regarding the acute and immediate risk that an initial bet is not without risk and not, in fact, "free." Those representations and omissions, which Plaintiff relied upon, are false and misleading.

3. These marketing representations and omissions violate state consumer protection law and violate the duty of care owed, as discussed in detail below. Consumers, including Plaintiff, were fraudulently induced to place bets with Caesars Sportsbook because of its misrepresentations.

4. Plaintiff and the Class members have been injured by signing up for and using Caesars Sportsbook for so-called "free" or "risk-free" initial bets that actually cost them money. Plaintiff brings this action on behalf of themself, and the putative Classes, because Plaintiff should not be responsible for monetary losses incurred as a result of bets that were promised to be "risk-free" and "free."

5. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Caesars Sportsbook from continuing to engage in their illegal practices as described herein.

## PARTIES

6. Plaintiff Lachae Vickers is a citizen and resident of Far Rockaway, New York.

7. Defendant American Wagering, Inc. d/b/a William Hill and Caesars Sportsbook is a gambling and entertainment company organized under the laws of Nevada with its principal place of business in Las Vegas, Nevada.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Classes in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

9.      This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.     Online Sports Betting

11.     In 2018, the U.S. Supreme Court ruled that states other than Nevada were free to establish their own sports gambling laws. Thirty-two states now allow legal online sports betting, and the legalization of such betting has led to a rush of aggressive marketing by operators hoping to lure new customers.

12.     Many of these marketing messages are presented as risk-free cash giveaways. For example, BetMGM offers a "risk-free first bet" of up to $1,000. Barstool Sports promises new users a $1,000 "bonus" for making a first bet. Caesars offers both new customers and—for certain sporting events, even existing customers—the most generous-sounding deals: a "free bet" worth

up to $5,000, a "risk-free" bet of the same amount, or sometimes simply "FREE $1,250." None of these promises are true.

13.     Such tantalizing offers have been effective at persuading Plaintiff and other Americans to open and use betting accounts, but new users later learn a startling reality: even so called "free" or "risk-free" bets can result in the customer losing every dollar of a wager.

14.     Not only do false promises of "free" or "risk-free" bets lure consumers into opening and using betting accounts, but the false promises can also normalize betting larger amounts than consumers would otherwise wager. Novices like Plaintiff are seduced into gambling over their heads, endangering their financial well-being and that of their families, having relied on a commonsense understanding of the "free" or "risk-free" betting promises, namely, that a "risk-free" or "free" bet means if they lose the bet, they will get back the money they wagered. That is not what Caesars Sportsbook actually provides, however.

15.     Here's how Caesars' "free" or "risk-free" bets actually work.

16.     Several years ago, many online sportsbooks truly did provide risk-free bets or otherwise provide no-strings-attached free cash to lure new users, for example by providing straightforward deposit matches when new users signed up. Starting in 2020, however, "risk-free" offers became more common among some online sportsbooks, after an initial wave of generous deposit bonuses contributed to steep losses for many operators.

17.     According to the Washington Post, as part of their effort to hook tens of millions of Americans on gambling, sportsbooks like Caesars have spent billions of dollars on splashy marketing promises and promotions. For example, in the 2021–2022 NFL season, online sportsbooks including Caesars Sportsbooks flooded NFL broadcasts with commercials promising

sign-up promotions. *See* https://www.washingtonpost.com/sports/2022/09/27/caesars-fanduel-draftkings-commercials/. The glut of sportsbook commercials has continued into the present.

18.     The calculus for online sportsbooks is simple: incessant broadcast ads and enticing sign-up deals make sense, since on average a new user will lose several thousand dollars to the sports book over the lifetime of each customer they can convince to sign up.

19.      Glitzy, eye-popping promotions like "free" or "risk-free" bets are a sure-fire method of luring new bettors choosing among myriad online sportsbooks—all of whom generally offer the same technology and the same betting options.

20.     While certain online sportsbook continue to offer truly free or risk-free bets, Caesars Sportsbook and others in recent years stopped doing so in most states (though for a brief period in 2021, Caesars offered cash deposit matches for new users in New York).

21.     In an online gambling marketplace saturated by sign-up promotions advertising a big "free" or "risk-free" dollar figure—some of which are truly risk-free and some of which, like Caesars Sportsbook, are not—consumer confusion reigns. Operators like Caesars Sportsbook exploit that confusion by promising "free" or "risk-free" bets but actually providing instead complicated deals that are anything but "risk-free."

22.     For example, if a new user places a $1,000 "risk-free" or "free" first bet at Caesars Sportsbook, that person is required to deposit and wager $1,000 in real dollars with the website. If the bet is successful, the winnings are paid out as usual. If the bet loses, however, the customer is credited with the amount lost, *not* in cash, but in bet credits that can only be used on the Caesars Sportsbook—and that expire in just 14 days.

23.     Subsequent bets made with those bet credits are *not* risk-free. In fact, if such bets lose, a bettor receives no compensation whatsoever. Instead, a consumer would have to win a subsequent bet or series of subsequent bets made with the credits provided *just to break even*.

24.     By no reasonable definition is the initial bet "free" or "risk-free." There is, in fact, a huge degree of risk in making that first bet—including the real and immediate risk that the entire cash amount of the first bet will be lost in short order.

25.     That is why, for example, regulators in Ohio have said such "free" or "risk-free" inducements are "false, misleading and explicitly against" state law. *See* https://casinocontrol.ohio.gov/SportsGaming/SportsGamingFAQs.aspx#894175-advertising-marketing-and-user-recruitment.

26.     Similarly, in New York, Attorney General Letitia James recently warned of "deceptive" online sports betting companies ahead of the 2023 Super Bowl. *See* https://ag.ny.gov/press-release/2022/consumer-alert-attorney-general-james-warns-new-yorkers-deceptive-online-sports. The Attorney General's office stated: "Since online sports gambling became legal in New York last month, New Yorkers have been bombarded with misleading ads on social media and streaming sites that claim 'risk-free' bets and '$1,000 welcome offers,' which sound like free money, but often come with strings attached without consumers' awareness." Attorney General James said,

> I urge all New Yorkers watching the Super Bowl and betting online for the first time to be careful – don't let scammers game your gamble. Before placing a bet, do your research into the platform, read the fine print of the offer, and follow our other tips to avoid any red flags and keep the odds in your favor. Online sports betting companies that fumble their advertising to mislead New Yorkers can expect to hear from my office.

27.     "If something is claiming to be free or risk-free, then it has to absolutely not require the patron to incur any loss or risk their own money," Matthew Schuler, executive director of

Ohio's Casino Control Commission, said in a recent interview. "Disclosing the risks within the terms and conditions isn't good enough," he added. *See* https://www.washingtonpost.com/sports/2022/12/26/risk-free-bets-mgm-draft-kings-fanduel-caesars/.

28.     That is also why certain industry participants including PointsBet, Tipico and Britain-based sportsbook Betfred have ceased making "free" or "risk-free" bet promises in recent months. While other operators have cleaned up their acts, Caesars Sportsbook has not.

29.     According to the Washington Post, Betfred COO Bryan Bennett admitted publicly that the company's prior "risk-free" offers were "unclear":

> "We had some unclear terms, which doesn't do anyone any good," Chief Operating Officer Bryan Bennett said. "You get angry customers and customer support agents getting beaten all day. We made a conscious decision to not do that anymore and try to be as upfront as possible."

*See* https://www.washingtonpost.com/sports/2022/09/07/sports-betting-sign-up-bonus/.

30.     Another Caesars Sportsbook competitor, FanDuel Sportsbook, is one of the market share leaders in online sports betting in the U.S. It recently has ceased making "risk-free" and "free bet" marketing representations because of complaints from users, consumer rights groups and regulators that such terms are deceptive.

31.     As one leading gambling website explains: "FanDuel moved away from the "risk-free bet" language because these promotions are not truly risk free. You *can* lose some or all of your initial deposit, if you're not careful." *See* https://www.actionnetwork.com/legal-online-sports-betting/how-do-fanduels-no-sweat-bets-work.

**B.     False and Misleading Marketing and Deceptive Sign-up Process Lures Reasonable Consumers to Sign Up for and Use Caesars Sportsbook.**

32.     Caesars Sportsbook introduced itself to the American public with a massive advertising blitz in 2020 and 2021.

33. Caesars's omnipresent national TV and print and internet ads — featuring actors J.B. Smoove and Halle Berry along with football legends Archie Manning and sons Peyton, Eli and Cooper — helped the sportsbook increase its market share dramatically.

34. Those ads directed consumers to the Caesars Sportsbook website and promised "risk-free" bets, "free bets," "up to $1,250 on Caesars"; "up to $1,250 free"; and other representations.

35. Caesars Sportsbooks' marketing strategy was part of an intentional initiative to capitalize on the addictive nature of gambling, and the established susceptibility of online sports betters.

36. The National Council for Problem Gambling ("NCPG") has raised concerns since 2018 about the susceptibility of online sports bettors. Among other things, its research has established that the rate of gambling problems among sports bettors, and particularly online sports bettors, are over twice those of gamblers in general. *See* https://www.ncpgambling.org/wp-content/uploads/2020/01/Sportsgambling_NCPGLitRvwExecSummary.pdf.

37. Of particular note, the NCPG observed, "Aggressive promotions in all forms of marketing and advertising make it more difficult for sports bettors who are trying to curtail their gambling. Ads that emphasize 'free play,' tout the ease of placing a bet, and offer risk-free bonuses are particularly problematic." *Id.*

38. In response to these and other risks, the NCPG established the Safer Sports Betting Initiative to specifically help reduce the risk of gambling problems created by aggressive advertising campaigns and other risks.

39. Since 2012, the NCPG has also promulgated its Internet Responsible Gaming Standards. In the 2021 update to these standards, the NCPG included the following standard:

"Advertising is not misleading about outcomes of gambling and does not misrepresent odds of winning/losing." *See* https://158bvz3v7mohkq9oid5904e0-wpengine.netdna-ssl.com/wpcontent/uploads/2022/01/NCPG-IRGS-May-2021.pdf.

40.    Speaking specifically about the use of "risk-free" language, Cait Huble, the NCPG's director of communications, noted, "Overall, 'risk-free' has always been problematic language to us because it's not truly risk-free. From a messaging perspective, it was deceptive." *See* https://sportshandle.com/fanduel-promotional-pivot-risk-free-no-sweat/.

41.    Nevertheless, Caesars Sportsbook continued to advertise its promotional offers as "risk-free."

42.    Below is a sampling of the ads routinely promulgated by Caesars and (with Caesars support and assistance) its partners:





CAESARS PROMO CODE:
**$1,250 RISK-FREE BET**
FOR PANTHERS VS.
FALCONS ON TNF

Also get:
- 1,000 Caesars Reward Credits
- 1,000 Tier Credits
- Odds boosts, parlay boosts, and more


CAESARS
SPORTSBOOK





CAESARS
SPORTSBOOK
FREE
$1,250



GET UP TO A **$1,250** FREE BET    CAESARS SPORTSBOOK    BET NOW





43.     Plaintiff recalls viewing one or more of these advertisements when watching television.

44.     During the Caesars Sportsbook sign-up process, Caesars Sportsbook's mobile app and online website feature numerous invitations and advertisements to sign up for the Caesars Sportsbook service, making the same or materially similar promises outlined above.

45.     In its marketing about Caesars Sportsbook and during the Caesars Sportsbook signup process within its mobile app and website, Defendant makes repeated promises that Caesars Sportsbook initial bets are "free" or "risk-free."

46.     At no time in Caesars Sportsbook's marketing or during Caesars Sportsbook's sign-up process were Plaintiff and the Class Members warned of the true financial risks of using the

Caesars Sportsbook service for an initial bet—including the immediate and acute risk of losing the entire amount in that initial bet and the risk that losses will never be reimbursed by Defendant.

47.     Caesars Sportsbook misrepresents (and omits facts about) the true nature, benefits, and risks of initial bets using the Caesars Sportsbook service. Had Plaintiff been adequately informed of these risks, she would not have signed up for or used Caesars Sportsbook for an initial bet.

48.     Defendant's marketing representations about Caesars Sportsbook—including within its app and website—misrepresent and never disclose these risks and material facts, instead luring accountholders to sign up for and use the service with the "free" and "risk-free" promises discussed herein.

49.     These representations—which all users, including Plaintiff, view in marketing and during the sign-up process—are false and contain material omissions.

50.     Defendant touts initial bets at Caesars Sportsbook as "free" and "risk-free." However, the marketing (including during the sign-up process) misrepresents and omits a key fact about the service:  that there is no realistic way for consumers to recoup money if their first bet loses.

51.     The misrepresented, and undisclosed nature of "free" or "risk-free" bets on the Caesars Sportsbook payment system means that virtually any money wagered by a new user is at great risk of being lost in part or in whole. This too is omitted from all marketing, including during the sign-up process.

52.     Defendant was required to accurately represent the unique features of the Caesars Sportsbook service in their marketing about it.  But it failed to do so.

53.     As a result, users like Plaintiff signed up for and used the Caesars Sportsbook service without the benefit of accurate information regarding that service, and later ended up with large, unreimbursed losses.  Such users never would have signed up for Caesars Sportsbook if they had known the extreme risks of using the service for an initial or supposedly "risk-free" bet.

54.     The acute and immediate risks described above are well known to Defendant but were omitted from all of their Caesars Sportsbook marketing to Plaintiff and the Class Members.

55.     A recent complaint about Caesars Sportsbook on the Better Business Bureau website illustrates the deceptive and unfair nature of Defendant's advertising. On January 20, 2023, a consumer made the following complaint concerning Caesars Sportsbooks' "Advertising/Sales Issues:"

> I took advantage of a risk free bet offer only to find out later that risk free was a complete lie. I made a deposit to my account, placed a bet, and lost. Caesars [sic] issued me a free bet for the dollar amount I lost on my initial bet, $1,500.00. I used that free bet on a wager where the Caesers [sic] app told me I was wagering $1,500.00 to win $1,515.00. I won the bet and ******* only credited me $15.00 instead of $1,515.00. I have escalated things as far as they will let me with customer service and all they will tell me is that buried in their terms and conditions is a line that says you dont [sic] actually get the money from your risk free bet back. This is completely unfair and deceptive. It would be one thing if it had said on my screen that I was wagering $1,500.00 to win $15.00 and I moved forward with that – that would be my fault for sure. But that's [sic] not what happened. Right up through the point of me submitting the wager, it said I was wagering $1,500.00 to win $1,515.00. I am seeking reimbursement of my $1,500.00 as I was clearly deceived. No one in their right mind would wager $1,500.00 knowing that the maximum they would win was $15.00.

*See* https://www.bbb.org/us/nv/las-vegas/profile/online-gaming/caesars-interactive-entertainment-inc-1086-90023294/complaints#1408419150.

56.     The experience of the person in the foregoing complaint to the Better Business Bureau is illustrative of the experience of all Class members who lost their initial bet with Caesars Sportsbook.

**C.     Plaintiff Vickers' Experience**

57.     When Plaintiff Vickers signed up for Caesars Sportsbook and decided to make an initial bet, she did so on the basis of Caesars' promise that her first bet would be "risk-free." Plaintiff understood that if she lost that full bet, her Caesars Sportsbook account would be credited with withdrawable cash.

58.     Based on Caesars Sportsbooks' promises, Plaintiff deposited and wagered $125.00 in cash. The bet lost, and Plaintiff was not reimbursed by Caesars for the amount wagered.

59.     Instead, Caesars provided website credits that Plaintiff was required to use within 2 weeks. Plaintiff did so, and after making those bets Plaintiff still had less money than she initially deposited and wagered. Her initial bet, therefore, was not "risk-free" or "free."

60.     Plaintiff would not have signed up for a Caesars Sportsbook account and made an initial bet had she known the truth about such supposedly "free" or "risk-free" bets.

## CLASS ALLEGATIONS

61.     Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Classes:

> **Nationwide Class:**
> All persons who signed up for a "free bet," "risk-free" bet or similar promotion with Defendant and lost any portion of their first bet.
>
> **New York Class:**
> All New York persons who signed up for a "free bet," "risk-free" bet or similar promotion with Defendant and lost any portion of their first bet.

62.     Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

63.     This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

64.     **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Classes are unknown to Plaintiff at this time; however, it is estimated that the Classes number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

65.     **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a)      Whether Defendant's advertising and promotional offers promises consumers that their bets would be "risk-free," "free," and/or "on us;"

b)      Whether Defendant adequately disclosed the facts and/or risks concerning the use the Caesars Sportsbook service;

c)      Whether Defendant's representations and omissions about the Caesars Sportsbook service are false, misleading, deceptive, or likely to deceive;

d)      Whether Defendant's actions or inactions violated the consumer protection statutes invoked herein;

e)      Whether Defendant's actions an inactions violated the common law causes of action invoked herein;

f)      Whether Plaintiff and the Class members were damaged by Defendant's conduct;

g)   Whether Plaintiff are entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

66.   **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendant's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

67.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and all Class members were similarly injured through Defendant's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Classes, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Defendant that are unique to Plaintiff.

68.   **Adequacy of Representation:** Plaintiff is an adequate class representatives because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

69.   **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an

individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant, and which would establish potentially incompatible standards of conduct for Defendant and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

**FIRST CAUSE OF ACTION**
**Violation of N.Y. Gen. Bus. Law §§ 349 & 350**
**(Asserted on Behalf of the New York Subclass)**

70.　　Plaintiff repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

71.　　Plaintiff brings this claim against Caesars Sportsbook under New York General Business Law ("GBL") §§ 349 and 350 on behalf of himself and the New York Subclass.

72.　　Caesars Sportsbook's conduct was misleading, deceptive, unlawful, fraudulent, and unfair in that Defendants materially misrepresented the nature of their promotions.

73.　　Caesars Sportsbook caused to be disseminated through New York state and elsewhere, through advertising, marketing, and other publications, statements that were untrue and misleading, and which it knew were untrue and misleading.

74.　　Caesars Sportsbook's misrepresentations were material and substantially uniform

in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Caesars Sportsbook's material misrepresentations.

75. Additionally, Caesars Sportsbook's conduct was unlawful. New York law requires that all gambling advertisements "comply with Racing, Pari-Mutuel Wagering and Breeding Law [PML] section 1363 and with advertising guidelines issued by the National Council on Problem Gambling." *See* 9 CRR-NY 5325.6.

76. Plaintiff and the New York Subclass have been injured by Caesars Sportsbook's deceptive acts or practices.

77. Plaintiff and the New York Subclass have no adequate remedy at law.

78. Caesars Sportsbook's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the New York Subclass and will continue to both damage Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

79. Any person who has been injured by reason of any violation of N.Y. GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or $50, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to $1,000 per violation, if the court finds that a defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

80. Pursuant to N.Y. Gen. Bus. Law §350(e) Plaintiff and the New York Subclass seek monetary damages (including actual damages, or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to N.Y. GBL § 350(a1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Caesars Sportsbook's unlawful

conduct, interest, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (Asserted on Behalf of the Classes)

81.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

82.     Defendant has negligently represented that the Caesars Sportsbook will ensure that customers will not be liable losing initial bets.

83.     Defendant, in promoting and marketing Caesars Sportsbook to consumers, had a duty of care to reasonably disclose and inform customers of material dangers and risks of the Caesars Sportsbook service. These are material facts that are only known by Defendant, but it was never disclosed to consumers.

84.     Defendant made misrepresentations of material fact that were false, namely by repeatedly promising and marketing Caesars Sportsbook as offering "free" and "risk-free" bets.

85.     Defendant knew and intended that Plaintiff and members of the Classes would rely upon its misrepresentations when deciding whether or not to use Caesars Sportsbook.

86.     Defendant was negligent because it knew or should have known that its representations in marketing materials about the Caesars Sportsbook service being "free" and "risk-free" are inaccurate and misleading.

87.     Plaintiff and members of the Classes justifiably acted in reliance upon Defendant's false and misleading statements by signing up for and using the Caesars Sportsbook service to make initial bets.

88.     Neither Plaintiff nor any reasonable consumer would have used Caesars Sportsbook to make initial bets if they had known of the true operation and risks of the Caesars Sportsbook service—risks Defendant alone was aware of and actively misrepresented.

89.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Classes were induced into using the Caesars Sportsbook service and have been harmed and suffered actual damages in the amount of unrecouped losses incurred as a result of an initial bet.

90.     Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

**THIRD CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Asserted on Behalf of the Classes)**

91.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

92.     Plaintiff brings this claim against Defendant under the common law on behalf of herself and the Classes.

93.     Defendant advertised its sign-up offers to indicate that bets placed on Caesars Sportsbooks' service would be risk free. Despite this representation, the promotions in fact carry a substantial risk of loss and when users lose their first bet, they receive credits with no cash value that may never allow them to recoup their initial losses. Therefore, Defendant has misrepresented the promotional offers.

94.     Caesars Sportsbook's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach

importance to such representations and would be induced to act thereon in making the decision to place bets on Defendant's platform in reliance on the same.

95.     At all relevant times when Defendant made such representations, Defendant knew that the representations were misleading, or acted recklessly in making the representations, without regard for their truth or falsity.

96.     Defendant intended for Plaintiff and Class members to rely on these representations.

97.     Plaintiff and Class members reasonably and justifiably relied on Defendant's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

98.     Had they known the truth, Plaintiff and Class members would not have placed bets with Defendant's platform in the first place.

99.     Therefore, as a direct and proximate results of Defendant's intentional misrepresentations, Plaintiff and Class members have suffered economic losses and other general and specific damages, including the amounts paid to Defendant for placing bets in the first place, and losses associated with any subsequent bets placed in an effort recover their original funds.

**FOURTH CAUSE OF ACTION**
**Fraudulent Inducement**
**(Asserted on Behalf of the Classes)**

100.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 68 as if fully set forth herein.

101.     Plaintiff brings this claim against Defendant individually and on behalf of all Class members.

102.    Defendant misrepresented multiple material facts about its promotional offers, as described throughout this Complaint.

103.    Plaintiff and Class members relied on Defendant's representations and omissions in creating accounts on Caesars Sportsbook and in placing wagers on the platform in reliance on the promotion.

104.    Plaintiff and Class members were justified in so relying, because they were entitled to believe that Defendant would not violate the law by failing to make requisite disclosures to its consumers, or to misrepresent the nature of its advertised offers.

105.    At the time Defendant made these misrepresentations to consumers, it knew them to be false.

106.    At the time Defendant made these misrepresentations to consumers, it had no present intent to fulfil the terms of the promotional offer as advertised to consumers.

107.    As a result of Defendant's misrepresentations, Plaintiff and Class members sustained monetary damages amounting to the total losses each sustained in reliance on placing "risk free" bets.

108.    Absent these misrepresentations, Plaintiff and the Class members would not have created accounts or placed bets on Caesars Sportsbooks' platform.

109.    Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and Class members have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to Defendant for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

**FIFTH CAUSE OF ACTION**
**Quasi Contract/Unjust Enrichment/Restitution**

**(Asserted on Behalf of the Classes)**

110.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

111.    Plaintiff brings this claim against Defendant individually and on behalf of all Class members.

112.    As alleged herein, Defendant has intentionally and/or recklessly made misleading misrepresentations to Plaintiff and Class members to induce them to create accounts and place bets on its platform.

113.    Plaintiff and the Class members have reasonably relied on these misleading representations and have not received the benefits promised by Defendant.

114.    Plaintiff and the Class members therefore have been induced by Defendant's misleading and deceptive representations about the promotional offers and paid more money to Defendant to place bets than they otherwise would and/or should have paid.

115.    Plaintiff and the Class members have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and the Class members.

116.    The money Defendant received was obtained under circumstances that were at the expense of Plaintiff and the members of the Class members. In other words, Plaintiff and the Class members did not receive the full value of the benefit conferred upon Defendant.

117.    Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the Class members back for the difference of the full value of the benefits compared to the value actually received.

118.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the New York Subclass are entitled to restitution, disgorgement, and/or the imposition

of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B.     Declaring that Defendant's policies and practices as described herein constitute a violation of the consumer protection statutes invoked herein;

C.     Declaring the Defendant's policies and practices described herein constitution a negligent misrepresentation, an intentional misrepresentation, fraudulent inducement, and/or a breach of a quasi unjust or unjust enrichment;

D.     Enjoining Defendant from the wrongful conduct as described herein;

E.     Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

F.     Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

G.     Awarding actual and/or compensatory damages in an amount according to proof;

H.     Punitive and exemplary damages;

I.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

J.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

K.      Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demands trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  March 22, 2023                          Respectfully Submitted,

/s/ Andrew J. Shamis
Andrew J. Shamis
New York Bar No. 5195185
Edwin E. Elliott*
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com
edwine@shamisgentile.com

Jeffrey D. Kaliel*
Sophia Goren Gold*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

Adam A. Schwartzbaum*
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
adam@edelsberglaw.com

*Pro Hac Vice forthcoming
Counsel for Plaintiff and the Proposed
Class